**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leo Stoller,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Bank of New York Mellon Trust Company; Bank of America; Countrywide Bank N.A.; Leonard Street and Donna Street; H&R Block Bank; M&I Marshall & Ilsley Bank; Stephen E. Sterrett and Betty L. Sterrett; RSM Capital Funding LLC; Trie Consulting LLC; Jon Mirmelli, individually and as co-founder RSM Capital; John Hall & Associates; Recontrust Company N.A., aka Bank of America; Does 1 Through 10,<br><br>　　　　Defendants. | No. 2:11-CV-00338-PHX-GMS<br><br>**ORDER** |

　　　　The sole Plaintiff in this case is Leo Stoller. Pending before this Court are: (1) his Motion to Disqualify Judge Snow for His Personal Bias and Prejudice Against Leo Stoller, Doc. 98; (2) Defendant M&I Marshall & Isley Bank's ("M&I") Motion to Dismiss and Joinder in Motion to Dismiss, Docs. 6, 17; (3) Defendants Bank of New York Mellon Trust Company, Bank of America, Countrywide Bank N.A., Recontrust Company N.A., and Bank of America, N.A.'s (collectively the "Bank of America Defendants") Motion to Dismiss, Doc. 7, (4) Defendant John Hall & Associates' ("John Hall") Motion to Dismiss and Joinders in Motion to Dismiss, Docs. 8, 15 (5) Defendant H&R Block Bank's ("Block Bank") Motion to Dismiss, Doc. 14, and, (6) Defendant Stephen E. and Betty L. Sterrett's Motion to Dismiss

and Joinder in Motions to Dismiss, Doc 84.

For the reasons set forth below, the Court denies Plaintiff's Motion to Disqualify, Doc. 98, and grants the remaining motions. The Motions to Dismiss by the Bank of America Defendants, Doc. 7, and the Sterrett Defendants, Doc. 84 are granted with prejudice. The remaining motions are granted with leave to amend.

## BACKGROUND

In his Complaint, filed in Maricopa County Superior Court in early December 2010, Plaintiff alleges, among other things, that he obtained rights to claims arising from four single family residences. The Complaint alleges that Plaintiff obtained the rights to the first property from Phillip B. Stone, and that he obtained the rights to the final three properties directly or indirectly through Rae Ribadeneira.

The Stone property was located at 28437 N.112th Way in Scottsdale Arizona. ("Property 1"). Pursuant to the Complaint, Phillip B. Stone obtained a loan from Countrywide to purchase this property. Complaint, Doc. 1-2 at ¶ 68. The Complaint alleges that Stone quit claimed the property to Christopher Stoller Pension and Profit Sharing Plan, LTD., ("CSPPSP") on September 19, 2008 and CSPPSP assigned to Leo Stoller "any claims arising or related to said property." *Id.* At ¶ 30. Attached as Exhibit 3 to the Complaint, and incorporated into the Complaint by reference, is Stone's quitclaim deed to CSPPSP. *Id.* at ¶¶ 16, 30.[1]

In 2005 and 2006 Rae Ribadeneira obtained three loans to finance home purchases in the Phoenix metropolitan area.

With her first loan, taken out on July 12, 2006, from Countrywide Financial d/b/a America's Wholesale Lender, Ms. Ribadeneira purchased a single family residence located at 10632 E. Blue Sky Drive in Scottsdale Arizona. ("Property 2"). Countrywide was the

---

[1] Documents, such as deeds and deeds of trust that are referenced in the Complaint and supplied by the parties may be considered in a Motion to Dismiss when their authenticity is not questioned. *Cervantes v. Countrywide Home Loans, Inc.,* ___ F.3d ___, 2011 WL 3911031 at * 5 n. 2 (9th Cir. Sept. 7, 2011).

- 2 -

beneficiary on a deed of trust on the property that was executed and filed on that same date. *Id.* at ¶¶ 17, 44. As the Complaint and the documents attached to it demonstrate, Ribadeneira quit claimed all her right title and interest in the property to CSPPSP on October 20, 2008. *Id.* at ¶ 32, Plaintiff has attached and incorporated the quit claim deed to the Complaint as part of Exhibit 1. On February 9, 2010, a trustee's sale occurred on Property 2. The Complaint alleges that Defendant Bank of New York Mellon purchased Property 2 for $1,113,750 at the sale. *Id.* at ¶ 87.

With her next loan, also taken out from Countrywide, approximately two weeks after the first, on July 27, 2006, Ribadeneira purchased a single family residence located near Property 2 at 10665 E. Blue Sky Drive, Scottsdale Arizona. ("Property 3"). Countrywide was the beneficiary on a deed of trust simultaneously recorded on the property. *Id.* at ¶ 18, 45. Ribadeneira quit claimed all her rights, title and interest in the property to CSPPSP on October 16, 2008. The quit claim deed is attached to the Complaint. On or about November 9, 2009 a trustee's sale occurred on Property 3. The Complaint alleges that purchasers of the property at the trustee's sale, or thereafter were Defendants RSM Capital Funding L.L.C., TRIE Consulting LLC, and Stephen E. and Betty L. Sterrett. *Id.* at ¶ 99.

On October 24, 2005, Ribadeneira refinanced property located at 47816 N. 15th Lane in New River ("Property 4"). *Id.* at ¶ 38, 46. Although Ribadeneira alleges that she refinanced the property from Block Bank, *Id*. at ¶¶ 46, 60-67, a deed of trust on the property was recorded with Premier Mortgage Funding as beneficiary on December 5, 2006. That deed of trust is incorporated in the Complaint. On September 24, 2008, a notice of trustee's sale was recorded against the property. Doc. 14, Ex. F. The Complaint alleges that a little less than a month later, on October 21, 2008, Ribadeneira quit claimed "all her rights, title and interest" in the property to CSPPSP, "including the right to pursue such claims against, among others any financial institutions, by quit claim deed and written assignment." The quit claim deed is incorporated in the Complaint. The Complaint further alleges that thereafter Ribadeneira assigned to Leo Stoller any claims arising or related to this property. *Id*. at ¶ 38. Plaintiff then subsequently contacted Block Bank on behalf of Ribadeneira. *Id*

at ¶ 39. Again according to the Complaint, Plaintiff notified the trustee that there were objections to the sale of Property 4 one month before the sale occurred.

Subsequently Property 4 was sold at a trustee's sale in late June 2009. A Trustee's Deed Upon Sale was recorded on June 26, 2009 noting that property 4 was sold to Block Bank for the amount of $250,000. Complaint at ¶ 119, Doc. 14, Ex. G. Approximately two months later, the Street Defendants purchased the property from Block Bank with the purchase financed by M&I. Complaint at ¶¶ 115, 119. The Streets subsequently signed a deed of trust on the property in which MERS was a nominal beneficiary for M&I.

Prior to any of the alleged foreclosures, on December 9, 2008, CSPPSP filed a previous complaint in Maricopa County Superior Court against Countrywide.[2] The Complaint sought damages for violating state and federal disclosure laws including the Truth-In-Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA) and various related state law claims. Doc. 7, Ex. H. It also sought to enjoin Countrywide from foreclosing on Properties 1, 2 or 3. Property 4 was not a subject of the lawsuit. That lawsuit was removed to federal court and dismissed with prejudice for failure to state a claim by Judge Wake on May 18th 2009. *Id.* at Ex. I.

Thereafter the non-judicial foreclosure sales on both Property 4 and Property 3 occurred on June 26, 2009 and November 9, 2009, respectively.

A month after the foreclosure sale on Property 3, on December 2, 2009, Plaintiff filed an additional complaint in the Circuit Court of Cook County, Illinois. That action was almost identical to the one filed by CSPPSP against Countrywide on December 9, 2008 and dismissed with prejudice by this Court in May 2009. The only distinctions were that the Plaintiff in the Illinois case was Leo Stoller as opposed to CSPPSP. Further, in addition to

---

[2] "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.'" *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) *quoting MGIC Indem. Copr. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986). The previous complaint filed by both CSPPSP and Leo Stoller, as well as the orders and judgments on those complaints are matters of public record and do not convert the motions to dismiss into motions for summary judgment.

- 4 -

Countrywide, the Illinois case named Bank of America, Recontrust Company, and individual officers of Bank of America, as parties Defendant–because Bank of American had purchased Countrywide and Recontrust was wholly-owned by Bank of America.

Like the 2008 case dismissed with prejudice by this Court, the Illinois Complaint sought damages for violating state and federal disclosure laws including the Truth-In-Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA) and various related state law claims related to the three properties. Doc. 7, Ex. H. Despite the fact that the foreclosure sale on Property 3 had already occurred, it also sought to enjoin Countrywide from foreclosing on properties 1, 2 or 3. Property 4 was not a subject of the lawsuit. The Complaint also asserted a common law claim for deceptive trade practices and a Racketeering and Illinois Rico Claim.

Thereafter the judicial foreclosure sale occurred on Property 2 on February 9, 2010.

On August 4, 2010, the Illinois Court dismissed Leo Stoller's complaint with prejudice finding that it was barred by the final judgment of this Court issued in May, 2009. In doing so, it further found both that Leo Stoller was in privity with CSPPSP and so was bound by the judgment against that entity and, further, that any new claims asserted by Plaintiff against the Defendants could have been raised in the case that was dismissed in this Court, and thus were barred by res judicata.

Five days later, on August 9, 2010 Plaintiff filed a new complaint in the Illinois Court. This complaint was based on essentially identical factual allegations concerning the three properties as were the previous two complaints. In this second Illinois complaint, however, Plaintiff added as Defendants, the lawyers of the Defendants in the previous suit, and Mellon Bank and several of its officers individually, based on the allegation that Mellon had purchased Property 2 at the trustee's sale that took place in February 2010. It also asserted additional common law and statutory claims against the former and new Defendants. The Cook County Court dismissed that entire case with prejudice on April 12, 2011.

Before Cook County dismissed Plaintiff's third case with prejudice, Plaintiff filed this complaint in Maricopa County Superior Court on December 3, 2010. It was removed to this

Court on February 18, 2011. The core of this Complaint remains Plaintiff's claims against the Countrywide, Recontrust, Bank of America and Mellon Defendants based on the loans originally made by Countrywide on Properties 1, 2 and 3. These claims are set forth in Counts one, (seeking to rescind the trustee's sale of Property 2), Count two (claiming the gross inadequacy of the sale price at trustee's sale on property 2), Count three (seeking to rescind trustee's sale on Property 3), Count four (alleging the gross inadequacy of the sale price at trustee's sale and unjust enrichment on Property 3) and Count seven (wrongful foreclosure as to Properties 2 and 3). The present Complaint adds Defendants RSM Capital Funding L.L.C., TRIE Consulting LLC, and Stephen E. and Betty L. Sterrett to Counts three and four and adds the Sterrett Defendants only with respect to Count seven. It does so because these Defendants either purchased Property 3 at the trustee's sale on Property 3 that occurred on November 9, 2009, or they were subsequent purchasers of the property. *Id.* at ¶ 99.

In Count five Plaintiff seeks to rescind the trustee's sale related to Property 4 and names Block Bank, M&I and Leonard and Donna Street as Defendants. Plaintiff names the same Defendants in Count six which alleges the gross inadequacy of the sales price at the trustee's sale and Count eight which alleges wrongful foreclosure. Plaintiff's basis for suing Block Bank is, he alleges, that Block Bank initiated the loan to Ribadeneira and, in doing so, engaged in practices that violated TILA and RESPA. See Complaint at ¶¶ 47, 60-67. He further alleges that Block Bank did not comply with Arizona notice requirements in conducting the non-judicial foreclosure sale. His allegations also apparently include an allegation that the notice of trustee's sale was insufficient to comply with the Fair Debt Collection Practices Act ("FDCPA"). *Id*. at ¶¶ 115-17. The Street Defendants and M&I are apparently named as Defendants to these Counts because the Streets subsequently purchased the property from Block Bank, and that purchase was financed by M&I.

**ANALYSIS**

Defendants' Motions to Dismiss have been briefed and have been pending for some time. The delay in obtaining a ruling on these motions results, in part, from Plaintiff's

attempt to take an interlocutory appeal from this Court's decision allowing Plaintiff's counsel to withdraw. This Court only permitted such withdrawal after it had obliged counsel for Mr. Stoller to file responses to the Motions To Dismiss filed by Defendants. The Ninth Circuit has recently issued its mandate dismissing Plaintiff's interlocutory appeal. Nevertheless, Plaintiff subsequently filed a Motion to Disqualify this Court. Prior to ruling on the Defendants' various motions to dismiss, therefore, this Court is first obliged to take up Plaintiff's Motion to Disqualify and to determine whether the motion has merit.

### 1. Motion To Disqualify

Plaintiff's motion is brought pursuant to 28 U.S.C. §§ 144 and 455. Having carefully considered the questions raised by the motion, the Court denies the motion in all respects.

To the extent that Plaintiff's motion is based on 28 U.S.C. § 455(a), that statute requires that "any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute "is self-enforcing on the part of the judge." *United States v. Sibla*, 624 F.2d 864, 867-8 (9th Cir. 1980). "[I]t includes no provision for referral of the question of recusal to another judge; if the judge sitting on a case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself." *Id.* at 868.

After thorough examination of the facts of this case, the undersigned is aware of no basis, and the Plaintiff provides none, on which the impartiality of this Court might reasonably be questioned. Plaintiff suggests that the undersigned is biased and prejudiced against him to the extent that a reasonable person would question the impartiality of this Court. The assertion of bias and/or prejudice set forth in Plaintiff's motion is based on rulings that the undersigned has issued in two related matters. However, the Plaintiff is not a party to either of those matters. Rather, Plaintiff's relative, apparently his brother, Christopher Stoller, is a party to those matters. In the first matter, no basis for federal jurisdiction was asserted. This Court, therefore, remanded the matter to state court. The

second remains pending before this Court.

The Plaintiff offers no basis on which to conclude that the Court has entered rulings against Christopher Stoller which suggest that its impartiality against Christopher's brother, the Plaintiff in this matter, could reasonably be questioned. Even if Plaintiff had done so in his motion, 'a judge's adverse ruling is not a basis on which his removal can be sought." *United States v. Studley,* 783 F.2d 934, 939 (9th Cir. 1986).

Section 144 applies when a party to a proceeding believes that the district judge "has a personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. Normally, a motion properly brought pursuant to § 144 "must be referred to another judge for a determination of its merits." *Sibla*, at 867. Nevertheless, where the affidavit brought pursuant to a § 144 motion is facially insufficient, "no relief under section 144 is available." *Id.* To adequately support the motion the movant must also file an affidavit that "specifically alleges facts stating grounds for recusal under section 144."

Plaintiff completely fails to comply with the threshold requirements of the statute. Even if the Court were inclined to credit the assertions of Plaintiff's motion as if it qualified as a separate affidavit, as the statute requires, the motion does not set forth factual material "legally sufficient" to state a claim that the undersigned has a "bias or prejudice bias against ***him*** or in favor of any adverse party[.]" 28 U.S.C. § 144 (emphasis added). The statute "must be given the utmost strict construction to safeguard the judiciary from frivolous attacks on its dignity and integrity and to prevent abuse and insure the orderly functioning of the judicial system." *Rademacher v. City of Phoenix,* 442 F. Supp. 27, 29 (D. Ariz. 1977) (citations omitted).

In his motion, Plaintiff asserts that "Stoller asserts that the undersigned has a personal bias and prejudice toward Stoller, a nonrepresented and disabled litigant." The Stoller that Plaintiff is referencing, however, is not the Plaintiff but Plaintiff's brother, who, again, is not a party to this action. In a footnote to the above sentence, Plaintiff notes that "Stoller has been declared disabled in Illinois Probate Court (Case no. 09 P 957), *see* attached order of Judge Winters, declaring Stoller a disabled person." The attached order, however,

- 8 -

demonstrates that it is not the Plaintiff that has been determined to be a disabled person. Rather, according to the attached judgment it is Christopher Stoller, presumably Plaintiff's brother, who is the subject of the petition and the court's order. According to the judgment, entered in late February of this year upon the verified petition of Leo Stoller, the Illinois Probate Court determined Christopher Stoller to be "totally without understanding or capacity to make and communicate decisions regarding his person." As a result, the Illinois Probate Court appoints the office of the Illinois State Guardian as the "continuous" "plenary" guardian of the estate and person" of Christopher Stoller.

Thus, Plaintiff sets forth no evidence that the Court would have had any bias or prejudice against Plaintiff. Of course, not only is Christopher Stoller not a party to this action, if the attached judgment is accurate and if it remains in force, Christopher Stoller may not act as a Plaintiff in this or any other action on his own behalf as it relates to his estate or financial affairs.

Plaintiff also makes in his motion generalized allegations charging the undersigned with bias and prejudice "for various reasons" including "denying, depriving and disregarding Stoller's due process rights; violating Stoller's Constitutional rights to have his motions heard and ruled upon" "issuing orders which did not provide Stoller meaningful time to respond; and "violating the duty to comply with the Supreme Law of the Land of Stoller's due process." Nevertheless, Plaintiff offers no explanation as to how any of the undersigned's rulings accomplished that result. Of course, even if he had, 'a judge's adverse ruling is not a basis on which his removal can be sought." *Studley,* at 939. The bias alleged must be personal or extrajudicial in nature.

Therefore, Plaintiff's pure speculation that the Court is biased against a non-party, based on a mental disability of which the Court was previously unaware, is insufficient as a matter of law to invoke the protections of 28 U.S.C. § 144. Plaintiff's Motion to Disqualify is therefore denied as not being based on legally sufficient reasons to invoke the protections of the statute. *United States v. Vespe,* 868 F.2d 1328, 1340 (3rd Cir. 1989) (holding that affidavit containing merely conclusory statements or opinion need not be credited in

- 9 -

considering a motion to recuse.).

**2.     The Bank of America and Sterrett[3] Defendants.**

All Plaintiff's claims set forth in Counts One, Two, Three, Four and Seven of the Complaint against the Bank of America and Sterrett Defendants are dismissed with prejudice. To the extent Counts One and Three seek to rescind the trustee's sale, they attempt to revive CSPPSP's claims to the property which were dismissed two and a half years ago by this Court in May 2009.

The quit claim deeds that are attached to the Complaint indicate that Properties 2 and 3 were quit claimed by Ribadeneira only to CSPPSP. After Ribadeneira quit claimed her interests in Properties 2 and 3 to CSPPSP, Plaintiff offers no basis on which he could make claims related to such properties except to the extent his rights may have been derivative of those of CSPPSP. Nevertheless, CSPPSP's right to make claims as against properties 1, 2 or 3 arising from any trustee's sales on those properties was terminated with prejudice by Judge Wake's Order dismissing CSPPSP's suit in May, 2009. Res judicata bars the reassertion of claims where "(1) the prior litigation involved the same parties or their privies, (2) the prior litigation was terminated by a final judgment on the merits, and (3) the prior litigation involved the same 'claim' or 'cause of action' as the later suit." *Hydranautics v. Filmtec Corp.,* 204 F.3d 880, 889 (9th Cir. 2000). Therefore, Plaintiff has no further basis to assert claims based on rights related to Properties 1, 2 or 3, or challenging the trustee's sale on those properties. They are thus dismissed as a matter of res judicata.

In his response, Plaintiff asserts that because the foreclosures had not yet occurred when CSPPSP brought its originally dismissed complaint, neither it nor he could have asserted claims based on the inadequacy of the sales price at the trustee's sales on Properties 2 and 3. Nevertheless, because, after the entry of Judge Wake's Order, neither CSPPSP, nor Plaintiff, acting based on any assignment from CSPPSP, could challenge the sale of the

---

[3] The Sterretts, the ultimate purchasers of Property 3, have separately moved to dismiss and joined in their co-defendants motions to dismiss.

properties, he also has no standing to challenge the adequacy of the property's sales price. *See AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024 (D. Ariz. Aug. 25, 2010).

Further, in the absence of a basis on which he could assert a claim to the property, Plaintiff was not entitled to notice under the foreclosure statutes. A.R.S. § 33-808 (2007) or § 33-809 (Supp. 2010). Plaintiff has not pleaded that he recorded his request with the County Recorder pursuant to the statutes. In such case A.R.S. § 33-811(C) (2007) effectively bars any claim for rescission by Plaintiff. It further demonstrates the insufficiency of Plaintiff's claim for failure to comply with the notice required under those statutes that he asserts in Counts one and three.

Even assuming Plaintiff was not precluded by Judge Wake's Order from challenging the gross inadequacy of the sales price, he would be precluded from doing so by either of the orders of the Cook County Circuit Court dismissing such claims with prejudice in Illinois. In both cases in the Illinois Court Plaintiff raised claims seeking the rescission of the trustee's sales that occurred on Properties 1, 2 and 3. He filed his first Illinois complaint after the trustee's sale had already occurred on Property 3. He filed his second Illinois complaint after the trustee's sale had already occurred on both Properties 2 and 3. He thus could have, and in the second complaint did, bring claims against the subsequent purchasers – *e.g.* Mellon Bank as the subsequent purchaser of Property 2.

Plaintiff's first Cook County complaint was dismissed with prejudice on August 4, 2010. His second Cook County complaint was dismissed with prejudice on April 12, 2011. Because Plaintiff could have and, in his second Illinois complaint, did in part raise claims against the subsequent purchasers of the properties that have been the subject of his repeated lawsuits, he is barred from raising claims against the subsequent purchasers related to the adequacy of the sales price by the dismissal with prejudice of both of his similar suits in Illinois. *International Union v. Karr,* 994 F.2d 1426, 1430 (9th Cir. 1993) (holding that the doctrine of res judicata precludes a party from bringing a second suit to assert claims "that could have been asserted in the prior action."), *see also McClain v. Apodaca,* 793 F.2d 1031,

1034 (9th Cir. 1986).

At any rate, Plaintiff has failed to adequately plead a claim for gross inadequacy of sales price under Arizona state law under either Counts two or four. According to that law "a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount." *In re Krohn,* 203 Ariz. 205, 212, 52 P.3d 774, 781 (2002) *quoting* Restatement (Third) of Property: Mortgages § 8.3 cmt. b. The allegations of Plaintiff's own Complaint, however, establish that the price garnered by Property 2 at the trustee's sale in February 2010 was approximately 50% of its appraised value in 2008 prior to the significant depression in real estate prices in Arizona. Such an allegation is insufficient to state a claim for gross inadequacy of sales price. Similarly, with respect to Property 3, Plaintiff's Complaint alleges that in 2007 it was valued at $1,775,000 and that it sold at the Trustee's sale in November 2009 for $1,352,600. This, too, is an insufficient allegation on which to state a claim for gross inadequacy of sales price.

Of course, Plaintiff could have also asserted the wrongful foreclosure claim that he asserts against these Defendants in his earlier complaints just as he could have earlier asserted his claim for inadequacy of the sales price. It is, apparently, indistinct from his claims in Counts One and Three. Thus, this claim too is barred by res judicata. *International Unions, supra.*

Even if it were not, "Arizona state courts have not yet recognized a wrongful foreclosure cause of action." *Cervantes*, 2011 WL 3911031 at *6. And, as the *Cervamtes* court further noted "[a]lthough a federal court exercising diversity jurisdiction is 'at liberty to predict the future course of [a state] law,' plaintiffs choosing 'the federal forum ... [are] not entitled to trailblazing initiatives under [state law]." *Id. quoting Ed Peters Jewelry Co. v. C&J Jewelry Co., Inc.,* 124 F.3d 252, 262-63 (1st. Cir. 1997). Where, as in this case, there is no allegation that Plaintiffs were current on any of the respective loans, this Court is disinclined to surmise that a state court would recognize a tort of wrongful foreclosure. Accordingly Count Seven of Plaintiff's Complaint is dismissed with prejudice, against the

- 12 -

moving Defendants as are Counts One, Two, Three, and Four.

### 3. **Claims Based On Property 4.**

Defendants M&I, Block Bank, and John Hall all move to dismiss for failure to state a claim, Docs 6, 8 and 14. Their motions are well taken.

#### a. **Block Bank**

Plaintiff's Complaint sets forth no basis on which Plaintiff may assert claims relating to Property 4. According to ¶ 38 of Plaintiff's Complaint, Rae Ribadeneira assigned all of her right title and interest in Property 4 to CSPPSP on October 21, 2008. The Complaint says that Ribadeneira "then assigned to LEO STOLLER any claims arising or related to this property." The Complaint further asserts that then Plaintiff contacted Block Bank on behalf of Ribadeneira on or about March 15, 2009. Nevertheless, if, as the Complaint alleges, Ribadeneira had quit claimed all of her right title and interest in Property 4 to CSPPSP on October 21, 2008, then Ribadeneira had no further interest in the property to assign to Plaintiff, or on which Plaintiff could represent her interests.

The Complaint states no basis on which Plaintiff has any rights relating to Property 4. In the absence of such a basis, Plaintiff's Complaint is dismissed with leave to amend. *See AOM Group, LLC v. Downey Sav. & Loan Ass'n, F.A.,* 2010 WL 3342024 (D. Ariz. Aug. 25, 2010).

Further, in the absence of a basis on which he could assert a claim to Property 4, Plaintiff was not entitled to notice under the foreclosure statutes. A.R.S. § 33-808 or § 33-809. Plaintiff has not pleaded that he recorded a request for notice with the County Recorder pursuant to the statutes. In such case A.R.S. § 33-811(C) effectively bars any claim for rescission by Plaintiff. Plaintiff's failure to allege a basis for standing further demonstrates the insufficiency of Plaintiff's claim for failure to comply with the notice required under those statutes that he asserts in Count Five.

Should Plaintiff have a good faith basis for seeking to amend his Complaint, however, the deed of trust which he has attached to, and incorporated into his Complaint, apparently demonstrates that Ribadeneira did not originate her loan on Property 4 with Block Bank as

the original lender, as some paragraphs of the Complaint allege. *See, e.g*, Complaint at ¶¶ 46, 60-67. Rather the original lender to Ribadeneira appears to have been Premier Mortgage Funding, Inc. To the extent that Block Bank was not the originator of the loan to Ribadeneira it is likely not an appropriate Defendant on any TILA, RESPA or Fair Debt Collection Practices Act ("FDCPA") Claims.

At any rate, as the Ninth Circuit recently noted in *Cervantes,* TILA claims are subject to a one-year statute of limitations, and the limitations period begins to run "when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time." *Cervantes v. Countrywide Home Loans,* ___ F.3d ___, 2011 WL 3911031 at * 8 (9th Cir. Sept. 7, 2011). Thus given the date on which the Complaint alleges that the loan documents were executed, any TILA claim appears to be time-barred. Further, as this Court has previously held, the FDCPA does not apply to non-judicial foreclosures of deeds of trust, and therefore, no FDCPA claim is appropriate. *Mansour v. Cal-Western Reconveyance Corp.,* 618 F.Supp. 2d. 1178, 1182 (D. Ariz. 2009).

Further, Plaintiff's Complaint in Count Six fails to adequately set forth a claim under Arizona law for grossly inadequate sales price. According to the Complaint the property in 2008 was valued at $334,000. A Trustee's Deed Upon Sale was recorded on June 26, 2009 noting that Property 4 was sold to Block Bank for the amount of $250,000. Complaint at ¶ 119, Doc. 14, Ex. G. Based on the Arizona law detailed above, the allegation is insufficient to state a claim for grossly inadequate sales price.

As is also set forth above, Arizona courts have not recognized a cause of action for wrongful foreclosure – Count Eight of the Complaint. For the reasons stated above, one will not be recognized by this Court in the absence of a good faith assertion that the underlying loan was not in default.

**b.     M&I**

In addition to the above-identified lack of any interest by Plaintiff held in Property 4, Defendant M&I is barely mentioned in a voluminous Complaint. The single mention it receives is for financing the subsequent purchase by the Street Defendants of Property 4 in

¶ 115 of the Complaint. In addition to the claim for wrongful foreclosure, Count Eight, that has already been dismissed, Plaintiff also names M&I as a Defendant in Counts Five (failure to comply with applicable law and for rescission), and Six (gross inadequacy of sale price and unjust enrichment).

Nevertheless, based on the allegations of the Complaint, there are no facts set forth upon which it could be determined that M&I is liable for either of the torts alleged, or is a necessary party in light of the relief sought. There is no factual allegation that M&I had any responsibility for, or in connection with, the conduct of the trustee's sale, was the purchaser at the sale, or, to the extent that M&I had rights in a deed of trust subsequently filed against the property, that there is any basis on which Plaintiff could require M&I to surrender that interest through rescission or otherwise. To the extent that M&I has any present interest in the property that is derivative of the rights of a subsequent purchaser for value, no facts have been pleaded with respect to M&I that would deprive them of the rights to which they are otherwise entitled under A.R.S. § 33-811(B) ("A trustee's deed shall constitute conclusive evidence of the meeting of those requirements in favor of purchasers or encumbrancers for value and without actual notice. Knowledge of the trustee shall not be imputed to the beneficiary."). And, at any rate, as is specified above, Plaintiff has failed to state a claim for grossly inadequate sales price in Count Six.

"Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes,* supra, at * 3. Because that is the case with respect to M&I under the current complaint, dismissal with leave to amend is appropriate here.

    **c.**    **John Hall**

Similarly, the Complaint makes virtually no mention of John Hall & Associates other than to name it as the locale of another co-defendant. *See* Complaint at ¶ 6(b). While each count of the Complaint sets forth the individual Defendants against which that count is brought, none of the counts in the Complaint is brought against John Hall. It is not apparent from a reading of the Complaint as a whole that John Hall was ever intended to be named as

a Defendant in this action. To the extent that the Plaintiff did intend to state a claim against John Hall, he has failed to do so. "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes,* supra, at * 3. Dismissal against John Hall & Associates with leave to amend is, thus, appropriate here. Accordingly,

**IT IS HEREBY ORDERED:**

1. Denying Plaintiff's Motion to Disqualify, Doc. 98.

2. Granting Defendants Bank of New York Mellon Trust Company, Countrywide Bank N.A., Recontrust Company N.A., and Bank of America, N.A.'s Motion to Dismiss, Doc. 7, with prejudice.

3. Granting Defendant Stephen E. and Betty L. Sterrett's Motion to Dismiss and Joinder in Motions to Dismiss, Docs. 84, 6, 8, 14, with prejudice.

4. Granting Defendant John Hall & Associates Motion to Dismiss and Joinders in Motion to Dismiss, Docs. 8, 15, with leave to amend.

5. Granting Defendant H&R Block Bank's Motion to Dismiss, Doc. 14, with leave to amend.

6. Granting Defendant M&I Marshall & Ilsley Bank's ("M&I") Motion to Dismiss and Joinder in Motion to Dismiss, Docs. 6, 17, with leave to amend.

**IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 11 and the inherent power of this Court that Plaintiff shall file a memorandum by **October 14, 2011** in which he shall show cause why he should not: (1) be assessed the attorneys' fees and costs of Defendants Bank of New York Mellon Trust Company, Countrywide Bank N.A., Recontrust Company N.A., and Bank of America, N.A. and Stephen E. and Betty L. Sterrett in filing their Motions to Dismiss; and (2) why he should not be barred from further filing any claims on Properties 1, 2 and 3 within the United States District Court for the District of Arizona without leave of court to do so.

**IT IS FURTHER ORDERED** that if Plaintiff has a good faith basis on which to seek to amend his Complaint against Defendants M&I, John Hall and Block Bank, he shall file

such an amended complaint **within 30 days** of this Order.  Should Plaintiff fail to file an amended complaint **within 30 days**, the Clerk of the Court is directed to terminate this action with respect to Defendants M&I, John Hall and Block Bank.

DATED this 26th day of September, 2011.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge